# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHELS CORPORATION,**
             Plaintiff,

v.                                          Case No. 15-C-0535

**RESITECH INDUSTRIES, LLC,**
             Defendant.

## DECISION AND ORDER

Michels Corporation commenced an action in state court for breach of contract against Resitech Industries, LLC. Resitech removed the action to this court under the diversity jurisdiction. See 28 U.S.C. § 1332. Before me now is Michels's renewed motion to remand the case to state court on the basis of a forum selection clause.[1]

## I. BACKGROUND

Michels is a utility contractor. Resitech distributes wire and cable. A third firm hired Michels as a general contractor to build a wind-energy farm in Vermilion County, Illinois. The project was known as the "Hoopeston" project. In order to build the wind turbines for the Hoopeston project, Michels needed transmission cable. In the summer of 2014, Michels agreed to purchase that cable from Resitech. Resitech intended to procure the cable from Superior Essex, Inc., a manufacturer of transmission cable.

On August 8, 2014, a purchasing assistant at Michels, Matt Wells, sent a purchase order for the cable to Resitech's sales manager, Jerry Braswell, and asked him to sign it.

---

[1]Michels originally moved to remand on June 1, 2015. On August 19, 2015, I denied that motion without prejudice and gave Resitech an opportunity to take limited discovery on certain facts that were relevant to the motion. Michels filed its renewed motion to remand at the close of the limited discovery period.

That purchase order, #C144920JS, contained Michels's terms and conditions, i.e., its "fine print." One term within the fine print of the purchase order was a forum selection clause stating that "[a]ny action concerning this P.O. shall be commenced in Dodge County, Wisconsin." ECF No. 1-1 at p. 15 of 19, ¶ 20.

Shortly after receiving Michels's purchase order, Braswell sent Wells a Resitech sales order, #21278, for the same lengths of cable, and asked Wells to sign the sales order. The Resitech sales order listed the goods sold and contained several terms relating to price, payment, and shipment. See ECF 24-9 at pp. 2–3. However, the sales order did not contain any "fine print" or otherwise suggest that it was subject to any additional terms and conditions. It did not contain a forum selection clause.[2]

On August 12, 2014, Braswell electronically signed Michels's purchase order on behalf of Resitech.[3] Braswell states that, before he signed, he told Wells that Resitech was unwilling to agree to "all" terms and conditions affixed to Michels's purchase order. Braswell Decl. ¶ 12. Wells informed Braswell that Michels would not move forward with the purchase unless someone from Resitech signed the purchase order. Braswell states that he told Wells that he would sign, "essentially under protest," as long as Wells

---

[2]During the first round of briefing on the motion to remand, Resitech claimed that the sales order contained a hyperlink to Resitech's fine print, and that such fine print included a forum selection clause requiring litigation in Pennsylvania. However, after further investigation during the discovery period, Resitech determined that the sales order it sent to Michels did not contain a hyperlink to any fine print. See Second Decl. of Glen Williams ¶¶ 9–14, ECF No. 28.

[3]During the first round of briefing on the motion to remand, Resitech refused to admit that Braswell electronically signed the purchase order. The question of whether he did was one of the matters on which I permitted Resitech to take discovery. Resitech now concedes that Braswell electronically signed the purchase order. See Br. in Opp. at 1, ECF No. 25; Decl. of Jerry Braswell ¶ 14, ECF No. 27.

understood that Resitech was not agreeing to "all" Michels's terms and conditions. Id. After signing, Braswell printed a copy of Michels's terms and conditions and made handwritten changes to them. He recalls sending the handwritten changes to Wells. However, none of Braswell's changes related to the forum selection clause or to any other term that is relevant to the motion to remand. See id. ¶¶ 16–18 & Ex. 1. Braswell's main concern was to make clear that Resitech would not be liable for liquidated damages. Id. ¶ 18 & Ex. 1 at p. 2 (handwritten notation in margin stating "no LD's").

Also after signing, Braswell asked Wells to sign Resitech's sales order, but Wells told Braswell that he was not allowed to sign Resitech's sales orders. Braswell did not insist that Wells sign the sales order, and Resitech decided to proceed with the transaction even though no one from Michels signed Resitech's sales order.

On August 30, 2014, Resitech informed Michels that it could not meet the time deadlines stated in Michels's purchase order because Superior Essex could not manufacture and deliver the cable on time. Representatives of Michels, Resitech, and Superior Essex then participated in a telephonic conference to address the problem. During the call, Resitech informed Michels that another vendor, Wind Turbine and Energy Cable ("Wind Turbine"), had in stock the kind of cable that Michels had ordered and could deliver it within the time specified in the purchase order. However, Michels's purchase order called for custom cable lengths, and Wind Turbine, which was not a manufacturer of cable, could deliver only "stock" cable lengths, which were longer than the cables Michels had ordered. Thus, if Michels wanted the cable to be delivered on time, it had to be willing to accept the longer cable lengths. Michels informed Resitech that it would accept cable from Wind Turbine even if the cable was not the precise length specified in

3

the purchase order. According to Resitech, its representatives then told Michels's representatives that "if Resitech was going to continue working on the Hoopeston project in an attempt to remedy Superior Essex's failure, Resitech would need assurances that all potential liquated damages claims against Resitech would be waived." First Decl. of Glen Williams ¶ 17, ECF No. 14; see also Braswell Decl. ¶ 22, ECF No. 27. The Resitech representatives stated that if this was unacceptable to Michels, Resitech would "cut its losses and walk away from the project entirely." First Williams Decl. ¶ 17. According to Resitech, the Michels representatives on the phone then agreed that they would not seek liquidated damages relating to the delivery of cable for the Hoopeston project. Id. ¶ 18; Braswell Decl. ¶ 22.

Following the conference call, Resitech sent Michels some technical information relating to the Wind Turbine cable, and Michels approved the cable. Resitech then delivered the substitute cable. The parties did not exchange any formal purchase orders, sales orders, or other documents in connection with the substitute cable.

In the following months, Michels and Resitech entered into additional transactions for the sale of cable. First, on September 24, 2014, the parties entered into a transaction for the sale of additional cable for the Hoopeston project. This sale was memorialized in Michels purchase order #47233-6275, which was signed by representatives of both Michels and Resitech. See ECF No. 117-1. This Michels purchase order contained the same fine print as the original purchase order, including the forum selection clause. In connection with the September 24th sale, Resitech sent sales order #21378 to Michels. See ECF No. 14-9, p. 2. Unlike the original Resitech sales order, the September 24th sales order contained a reference to terms and conditions. Specifically, it stated that "[a]ll sales are

4

subject to Resitech's standard terms and conditions. By receiving this estimate, I affirm that I have read, understand, and voluntarily agree to be bound by Resitech's Terms and Conditions, which have been furnished me as an attachment to this document." Id. However, no terms and conditions were attached to the document or otherwise furnished to Michels. Moreover, the terms and conditions to which the document apparently referred did not contain a forum selection clause or any other terms that are relevant to the motion to remand. See Second Williams Decl. ¶¶ 11–12, 14 & Ex. 5, ECF Nos. 28 & 28-5. No Michels representative signed this sales order.

Next, on October 14, 2014, Resitech sent Michels a Resitech sales order, #21424, for cable relating to the Hoopeston project. See ECF No. 14-10 at p. 2. This was for cable that Michels had purchased under the original Michels purchase order (#C144920JS), which the parties had signed on August 12, 2014. The Resitech sales order contained the same language relating to terms and conditions as did the September 24th sales order. But once again, no Resitech terms and conditions were attached, and the terms to which the sales order referred did not contain a forum selection clause or any other terms that are relevant to the motion to remand. See Second Williams Decl. ¶¶ 11–12, 14 & Ex. 5, ECF Nos. 28 & 28-5. Again, no Michels representative signed the sales order.

Also on October 14, 2014, Resitech sent Michels sales order #21425 relating to cable for a different Michels project, which was located in Wisconsin. See ECF No. 14-10 p. 4. The sales order contained the same language relating to terms and conditions as the September 24th sales order and the other October 14th sales order. Again, the terms were not attached and did not contain a forum selection clause or any other terms that are relevant to the motion to remand. And again, Michels did not sign the sales order.

5

However, on October 24, 2014, Michels sent a purchase order for this transaction to Resitech, and Resitech signed that order. See ECF No. 16-6. The purchase order included the same fine print as Michels's other purchase orders, including the forum selection clause.

On November 11, 2014, the parties entered into another transaction for the sale of cable relating to the Hoopeston project. In connection with this transaction, representatives from both Michels and Resitech signed Michels purchase order #47234-6461. See ECF No. 17-2. This purchase order contained the same fine print as the other Michels purchase orders, including the forum selection clause. For this transaction, Resitech sent Michels a Resitech sales order, #21501. See ECF No. 14-11 p. 7. Unlike Resitech's earlier sales orders, this one had a hyperlink to Resitech's fine print. Moreover, the hyperlink directed the reader to new, much more elaborate, fine print that Resitech had adopted in the fall of 2014. See Second Williams Decl. ¶¶ 3–4, 10–14 & Ex.2. The new fine print included a forum selection clause requiring litigation in Pennsylvania. Michels did not sign the Resitech sales order.

Finally, on November 18, 2014, the parties entered into a transaction for the sale of cable for a different Michels project, known as the "Gouldsboro" project. In connection with this transaction, representatives from both Michels and Resitech signed Michels purchase order #47248-6536. See ECF No. 17-3. This purchase order contained the same fine print as the other Michels purchase orders, including the forum selection clause. For this transaction, Resitech sent Michels Resitech sales order #21519. See ECF No. 14-11 p. 9. This sales order, like the November 11th sales order, contained a link to

6

Resitech's new terms and conditions, which included the forum selection clause requiring litigation in Pennsylvania. Again, however, Michels did not sign the sales order.

On April 13, 2015, Michels commenced this suit by filing a complaint in the circuit court in Dodge County, Wisconsin. The complaint describes the nature of the action as a claim for declaratory judgment arising out of the original Michels purchase order, #C144920JS. However, the gravamen of the complaint is Michels's allegation that Resitech breached the original purchase order by failing to deliver the cable on time and by delivering cable that did not conform to the specifications in the purchase order. See Compl. ¶¶ 2–3. Michels alleges that Resitech's breaches caused it to incur damages, and that it was entitled to withhold payments to Resitech in an amount that corresponds to those damages. The ultimate relief that Michels seeks is a declaratory judgment stating that because of Resitech's breaches Michels does not owe Resitech any additional payments under the purchase order. Id. ¶¶ 3–5.

On May 4, 2015, Resitech removed the action to this court. A few days later, Resitech filed a counterclaim against Michels, in which it sought judgment against Michels in the amount of $206,677.52. The counterclaim alleges that in addition to withholding payments Michels owes to Resitech in connection with the Hoopeston project, Michels is withholding payments to Resitech in connection with other projects governed by separate contracts. Countercl. ¶ 30. However, Resitech also alleges that all of the payments that Michels has withheld are to offset damages that Michels claims to have incurred because of Resitech's failure to perform its obligations relating to the Hoopeston project. Countercl. ¶¶ 38k, 38m.

## II. DISCUSSION

Michels moves to remand this case to the Dodge County Circuit Court on the basis of the forum selection clause in the original purchase order. See Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248, 252 (7th Cir. 1996) ("Enforcing a forum selection clause in a contract is a permissible basis for remand."). As noted, that clause requires "[a]ny action concerning this P.O." to be "commenced in Dodge County, Wisconsin." There is no dispute over the meaning of this clause—the parties agree that if the clause applies, it requires litigation in state court in Dodge County. However, Resitech argues that the clause is not part of the contract at issue in this case. Resitech contends that this case presents a "battle of the forms" that must be resolved using § 2-207 of the Uniform Commercial Code. See Wis. Stat. § 402.207.[4] It further contends that under § 2-207, the parties' conflicting forum selection clauses are "knocked out," leaving the parties free to pursue litigation in any court in which jurisdiction and venue is otherwise proper. Thus, argues Resitech, the case may proceed in this court.

"'Battle of the forms' refers to the not uncommon situation in which one business firm makes an offer in the form of a preprinted form contract and the offeree responds with its own form contract." Northrop Corp. v. Litronic Indus., 29 F.3d 1173, 1174 (7th Cir. 1994). At common law, any discrepancy between the forms would prevent the offeree's response from operating as an acceptance. Id. Article 2 of the UCC does away with this approach, in that it provides rules designed to preserve the contract and identify its terms

---

[4] The parties agree that Wisconsin substantive law governs the question of contract formation. Wisconsin's version of Article 2 of the Uniform Commercial Code is codified in Chapter 402 of the Wisconsin Statutes.

8

when the parties exchange conflicting forms. Under these rules, when a party sends a written offer that makes acceptance of the offer subject to the terms of the offeror's form, and the offeree responds with a form making its acceptance expressly conditional on assent to new or different terms that appear in the offeree's form, no contract is formed unless the offeror accepts the offeree's terms. Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co., 965 F.2d 1442, 1449 (7th Cir. 1992). If, without the offeror's acceptance of the offeree's terms, the parties nevertheless act as if a contract has been formed, the terms of their agreement are determined by § 2–207(3), which, as set forth in Wisconsin Statute § 402.207(3), provides:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chs. 401 to 411.

Dresser Industries, 965 F.2d at 1449.

In the present case, Michels's claim that Resitech breached the parties' original contract does not present a battle of the forms. That is because Resitech did not respond to Michels's preprinted form by sending Michels a form containing Resitech's own terms and conditions. Resitech did send Michels a sales order, but as discussed above, that sales order did not contain any "fine print." Instead, it simply listed the goods sold and contained several terms relating to price, payment, and shipment that were consistent with Michels's purchase order. Nothing in the Resitech sales order made Resitech's acceptance conditional on Michels's assent to any additional or different terms. Thus, under UCC § 2-207(1), Resitech's sending the sales order likely operated as an unqualified

9

acceptance of Michels's offer. It certainly did not precipitate a battle of the forms, since the sales order was not a "form" in the first place. Moreover, Resitech separately accepted Michels's offer, as embodied in the purchase order, when Braswell signed the purchase order. See, e.g., Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 326 (6th Cir. 1998) (party's signing other party's form operates as an acceptance of the terms and conditions as stated in the form). Thus, Michels's original purchase order, including the attached terms and conditions, constitutes a binding contract between Michels and Resitech.

Resitech contends that it did not unqualifiedly accept Michels's offer because, before signing, Braswell told Wells that he was only signing the purchase order "under protest" and that his signature would not be considered an acceptance of "all" of Michels's terms and conditions. See Braswell Decl. ¶ 12. However, Resitech cites no authority suggesting that a party's orally stating that it is signing a contract "under protest," or that its signature should not be deemed an acceptance of "all" terms contained in the contract, could have any legal effect. See Resitech Br. at 2, ECF No. 25. Nor would it make sense to give legal effect to such oral statements. Here, Michels, through Wells, told Resitech, through Braswell, that it would not proceed with the sale unless Resitech signed Michels's form. Although Braswell was reluctant to sign, he did not want to lose the sale. Thus, Braswell acceded to Michels's demand and signed the form. Resitech should not now be able to avoid the consequences of its decision by pointing to oral statements it made indicating it was reluctant to sign the contract, particularly when the signed document states, as Michels's did, that a signature "constitutes an unqualified acceptance" of the buyer's offer. See Michels's Terms and Conditions ¶ 1.

10

In any event, even if Braswell's oral statements could be given legal effect, there is no evidence suggesting that one of the terms that Braswell objected to was the forum selection clause. After signing Michels's purchase order, Braswell printed a copy of Michels's terms and conditions, made handwritten changes to them, and then supposedly faxed the handwritten changes to Wells. However, none of Braswell's changes related to the forum selection clause. See Braswell Decl. ¶¶ 16–18 & Ex. 1. Thus, the forum selection clause would be binding on Resitech even if Braswell's oral statements might have operated as a rejection of any terms and conditions that he specifically objected to.

Resitech next argues that even if it accepted the terms and conditions in Michels's original purchase order, the resulting contract was terminated when Michels agreed to accept the stock cable lengths from Wind Energy rather than the custom lengths specified in the purchase order. According to Resitech, if the original contract was terminated, Michels cannot now enforce the forum selection clause. However, Resitech points to no evidence from which it could be reasonably inferred that Michels terminated the original purchase order.[5] As discussed above, Resitech's witnesses have submitted declarations in which they state that Michels agreed to "waive" any claim for liquidated damages against Resitech in connection with the Hoopeston project in exchange for Resitech's assistance in procuring substitute cable. But a party's agreeing to waive a right under a contract is not

---

[5]In its brief, Resitech contends that Michels did not fully respond to its written discovery requests concerning the events surrounding the agreement to accept substitute cable. See Br. in Opp. at 5–6, ECF No. 25. However, during the discovery period, Resitech did not file a motion to compel discovery from Michels, and it apparently did not even inform Michels that it deemed Michels's discovery responses inadequate. See Michels Reply Br. at 6 n.4. Thus, Resitech has forfeited its right to challenge the adequacy of Michels's discovery responses. See, e.g., United States v. Rodriguez-Gomez, 608 F.3d 969, 972 (7th Cir. 2010) (party forfeits right by failing to timely assert it).

11

the same thing as terminating the entire contract. Indeed, the purchase order itself states that Michels's waiver of any right under the purchase order will not be deemed a waiver of any other right under the purchase order. See Michels Terms and Conditions ¶ 22. Thus, Michels could agree to waive its entitlement to liquidated damages without giving up any other rights under the purchase order, including its right to enforce the forum selection clause.

Resitech also contends that because Michels agreed to accept cable that did not conform to the specifications in the original purchase order, the parties must be deemed to have entered into an entirely new agreement. However, Michels agreed to accept cable that did not meet its specifications only after Resitech informed Michels that it would be unable to fully perform its obligations under the original purchase order. Thus, Resitech's offer to supply substitute cable was an attempt to reduce its liability under the original purchase order, not an offer to enter into an entirely new contract. It is true, as I have discussed, that Resitech claims to have conditioned its continued work under the contract on Michels's waiver of any right to liquidated damages. But again, even if Michels waived its right to liquidated damages, it does not follow that it also waived its other rights under the contract or agreed to terminate the contract. And no other evidence suggests that Michels agreed to waive its other rights or to terminate the contract.

In a further attempt to establish that the original purchase order was terminated, Resitech points out that the purchase order states that it may be modified "only by a written document referencing this P.O. and signed by both parties." See Michels Terms and Conditions ¶ 29. Resitech notes that the parties did not embody Michels's agreement to accept substitute cable in a written document referencing the purchase order and signed

12

by both parties, and that they therefore did not successfully modify the original purchase order. Resitech contends that this means the parties must have terminated the contract. But it does not follow from the fact that the purchase order forbids oral modifications that the parties' attempted oral modification resulted in termination of the agreement. What follows is that the parties' attempted modification failed, and that Resitech is liable for breach of the original, unmodified agreement.[6]

Resitech next contends that even if the original purchase order relating to the Hoopeston project was not terminated, this lawsuit concerns additional transactions that are not subject to the original purchase order and its forum selection clause. Although the parties entered into a number of additional transactions during the fall of 2014, Resitech focuses on only two of them: (1) the transaction in November 11, 2014 relating to the Hoopeston project, and (2) the transaction in November 18, 2014 relating to the Gouldsboro project. See Br. in Opp. at 7–11, ECF No. 25. These are the two transactions in which Resitech sent sales orders to Michels that contained hyperlinks to Resitech's detailed terms and conditions, including its forum selection clause. Resitech contends that because the parties exchanged conflicting forms for these two transactions, the conflicting terms, including the parties' forum selection clauses, are "knocked out" under UCC § 2-702(3). Resitech then contends that if either of these two transactions is not subject to a

---

[6] I note, however, that the purchase order does not appear to require Michels's waiver of its rights under the contract to be in writing. See Michels Terms and Conditions ¶ 22. Thus, Resitech might be able to enforce Michels's alleged oral waiver of its right to liquidated damages, notwithstanding the contract's bar on oral modifications. However, this is not a matter I need to address to resolve the motion to remand. Also, I am not sure what Resitech is referring to when it references "liquidated damages," as I have been unable to find any reference to liquidated damages in the purchase order.

13

forum selection clause, then this case may proceed in this court, even though an action concerning the original purchase order may proceed only in state court in Dodge County.

Resitech cites no authority, and develops no legal argument, to support the final premise of its argument, i.e., that if either of the two November transactions is not governed by a forum selection clause, then the case may proceed in this court. And I conclude that this premise is incorrect. The forum selection clause at issue applies to "[a]ny action concerning" the original purchase order. See Michels Terms and Conditions ¶ 20. In the present case, Michels alleges that Resitech breached the original purchase order and only the original purchase order. Thus, this case is an "action concerning" the original purchase order and must proceed in state court. It is true that Resitech has brought a counterclaim alleging that Michels improperly withheld payments owed to Resitech in connection with the November transactions, but Michels withheld those payments because it deemed Resitech to be in breach of the original purchase order. So Resitech's claim concerning the November transactions also concerns the original purchase order and would be governed by the forum selection clause of the original purchase order. See Cemex Construction v. LRA Naples, LLC, 779 S.E.2d 444, 415–17 (Ga. Ct. App. 2015) (holding that forum selection clause applying to "any action concerning" the contract governed case even though case concerned "multiple, interrelated contracts" and some contracts did not contain forum selection clauses). Thus, this action must proceed in state court regardless of whether the parties' conflicting forum selection clauses relating to the November transactions are "knocked out" under UCC § 2-207(3).

However, I also conclude that because Resitech signed Michels's purchase orders for the November transactions, those transactions are subject to their own forum selection

clauses that require litigation in Dodge County. By signing Michels's purchase orders, Resitech accepted the offers they contained, thereby forming contracts for the sale of cable. See Andersons Inc., 166 F.3d at 326. Because "the writings of the parties" establish contracts, resort to UCC § 2-207(3), which applies only when the writings of the parties "do not otherwise establish a contract," is unnecessary. It is true that Resitech's forms contain terms that might have made resort to § 2-207(3) necessary had Resitech not signed Michels's forms, but the fact remains that Resitech signed Michels's forms and thus accepted its offers. In contrast, Michels did not accept any offer made by Resitech. Although Resitech's form states that Michels could reject Resitech's offer "by not ordering or receiving" any goods, it does not state that refusing to order or receive goods is the only means of rejecting Resitech's offer. See Resitech Terms and Conditions § 1. And Michels's sending Resitech its own purchase orders, which provided that their terms were exclusive, amounted to a rejection of Resitech's offers and the making of counteroffers. Also, although Resitech's form purports to reject any counteroffers made by Michels, id., Resitech defeated its own form by signing, and thereby accepting, Michels's counteroffers. Accordingly, any action concerning the November purchase orders is subject to the forum selection clause contained in Michels's terms and conditions.

Finally, I address Michels's request for attorneys' fees. The removal statute states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Conversely, when

15

an objectively reasonable basis exists, fees should be denied. Id. The Seventh Circuit has said that "[a]s a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007). "By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." Id.

In the present case, I conclude that Resitech had an objectively reasonable basis for seeking removal, and that therefore no fees should be awarded. When Resitech removed the case, it mistakenly thought that it had included a hyperlink to its comprehensive terms and conditions—which included a forum selection clause that conflicted with Michels's—with each sales order it sent to Michels. Resitech's mistake was not caused by Resitech's failure to conduct a reasonable investigation into the facts prior to filing the notice of removal. Rather, Resitech's employees were unaware that Resitech's computer system was automatically "populating" electronic copies of older sales orders with the hyperlink, even though the sales orders that were actually sent to customers did not contain the link. Resitech did not learn of this problem until after removal, when Michels noted in its briefs that the sales orders in its possession did not match the sales orders that Resitech had attached to its answer. Thus, at the time of removal, Resitech had a reasonable basis for believing that, for every transaction at issue in this suit, Resitech had sent Michels a sales order containing a forum selection clause that conflicted with Michels's forum selection clause.

Michels contends that Resitech's having a reasonable basis for believing that it served Michels with its own terms and conditions did not render the removal reasonable,

16

because Resitech should have known at the time of removal that Braswell had signed all of Michels's purchase orders, and that therefore there could be no "battle of the forms" that resulted in each party's forum selection clause being "knocked out." I agree that Resitech should have known that Braswell had signed all of Michels's purchase orders. Although at the time of removal Braswell was no longer a Resitech employee, Resitech has not pointed to any reasonable basis for believing that his electronic signatures on Michels's forms might not have been genuine. Moreover, Resitech does not explain why it did not, before filing the notice of removal, either contact Braswell and ask him whether he signed the purchase orders or search his email records to determine whether he did so.

However, even though Resitech should have known at the time of removal that Braswell signed all of Michels's purchase orders, it was not clearly established at that time that Braswell's having signed the purchase orders eliminated any "battle of the forms" issues under UCC § 2-207. Although Michels has cited several cases stating that a party's signature on the other party's form avoids a battle of the forms, none of them are binding on this court. See Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 326 (6th Cir. 1998); In re Cajun Elec. Power Co-op., Inc., 791 F.2d 353, 362 (5th Cir. 1986); Agrico Canada Ltd. v. Helm Fertilizer Corp., No. 08-CV-2132, 2009 WL 4730525, at *8 (M.D. Fla. Dec. 6, 2009). Moreover, I am unwilling to conclude that a party's signature on the other party's form always prevents a battle of the forms from materializing. For instance, Michels's purchase order states that its own signature on a seller's form "shall not constitute [Michels's] assent to any terms and conditions contained in Seller's documents." Terms and Conditions ¶ 1. So had Michels's signed Resitech's form, Michels could have reasonably argued that it did not accept Resitech's offer and that resort to UCC § 2-207(3)

17

was necessary. Here, Resitech's forms were not as strong as Michels's, and for this reason I have concluded that Resitech's signing Michels's forms resulted in Michels winning the battle of the forms relating to the November transactions. But Resitech's forms did contain terms that made its decision to remove reasonable, such as the term stating that the form itself constitutes a rejection of any of Michels's offers or counteroffers. Although Resitech's arguments did not carry the day, they were not unreasonable. Thus, I conclude that Resitech is not liable for attorneys' fees.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Michels's motion to remand is **GRANTED**. However, Michels's request for attorneys' fees is denied.

Dated at Milwaukee, Wisconsin, this 16th day of February, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge